IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ROBERT LOWE,                          *

        Petitioner,
v.                                    *    CIVIL ACTION NO. JKB-11-2899

KATHLEEN GREEN, *et al.*,             *

        Respondents.                  *
                                        ***

## **MEMORANDUM**

Now before the court is a petition for habeas corpus relief filed by Robert Lowe (ECF No. 1), respondents' answer thereto (ECF No. 10) and petitioner's reply (ECF Nos. 13 & 14). After review of these documents, the court finds no need for an evidentiary hearing. *See* Rule 8(a), *Rules Governing Section 2254 Cases in the United States District Courts*. For the reasons to follow, the petition will be denied and dismissed with prejudice.

## **Factual and Procedural History**

Petitioner was charged in the Circuit Court for Wicomico County with several drug related offenses. On March 12, 2007, a hearing was held on petitioner's motion to suppress evidence seized by law enforcement authorities. ECF No. 10, Ex. 2. The motion was denied. *Id*. On April 11, 2007, petitioner was tried before a jury. The facts developed at trial as recounted by the Court of Appeals of Maryland follow:

> At the jury trial held on April 11, 2007, Cpl. King's testimony was consistent with his testimony at the suppression hearing. The State also called Trooper Elin and Sergeant Jason Yankalunas ("Sgt. Yankalunas") of the Salisbury Police Department to corroborate the actions of the police at the scene of the arrest. Trooper Elin testified that, upon his arrival, he saw Lowe exit the vehicle and run. Trooper Elin chased Lowe on foot and apprehended him behind the residence at 606 Truitt Street. Trooper Elin also recovered the brown paper bag, along with seven individual bags containing powder and crack cocaine.

> Lowe and the passenger were placed under arrest. According to Cpl. King, a search of Lowe incident to arrest yielded "$218.15 of U.S. currency and a Motorola Nextel cell phone." Further, the contents of the bags were examined and found to be "174.7 grams of crack cocaine and 69.1 grams of powder cocaine." Sgt. Yankalunas, who testified as an expert in narcotics valuation, identification and investigation, and the common practices of users and dealers of controlled dangerous substances, stated that the street value of the crack cocaine seized was between $3,000 and $6,000, while the value of the powder cocaine was between $2,000 and $6,000. Sgt. Yankalunas also opined that the amount of cocaine seized was not consistent with personal consumption. No one testified on behalf of Lowe either at the suppression hearing or at the jury trial.

*Id.*, Ex. 7, pp. 3-4.

Petitioner was convicted of possession of cocaine with intent to distribute, possession with intent to distribute a large amount of cocaine, possession of cocaine, possession of crack cocaine with the intent to distribute, and possession of crack cocaine. *Id.*, Ex. 3, pp. 219-22. He was sentenced, on May 18, 2007, to a 20-year term of incarceration, the first 10 years to be served without parole. *Id.*, Ex. 4, pp. 39-43.

Petitioner noted a timely appeal wherein he raised the following claims:

1. Did the trial court err in denying petitioner's motion to suppress? and

2. Did the trial court err in sentencing petitioner as a subsequent offender?

*Id.*, Ex. 5, p. 1.

Petitioner's convictions were affirmed on March 17, 2009. *Id.*, Ex. 7. Petitioner's request for further review of his Fourth Amendment claims by way of petition for writ of certiorari filed in the Court of Appeals of Maryland was denied on June 19, 2009. *Id.*, Ex. 8-10.

While petitioner's direct appeal was pending, he instituted state post-conviction proceedings. *Id.*, Ex. 1 & 11. In a petition filed on June 12, 2007, he argued ineffective

assistance of trial counsel for failing to (1) communicate with him adequately and devise an effective strategy; (2) cross-examine witnesses properly; and (3) challenge the State's evidence through suppression hearings. *Id.*, Ex. 11 & 12. On September 8, 2010, petitioner filed a motion to correct illegal sentence. *Id.*, Ex. 1. A hearing was held on October 7, 2010, to consider the claims raised in both the post-conviction petition and motion to correct illegal sentence. On November 23, 2010, the court entered an opinion denying relief. *Id.*

Petitioner, pro se, filed an application for leave to appeal the adverse ruling of the post-conviction court. He alleged that (A) trial counsel was ineffective for failing to (1) prepare an effective defense; (2) have the canine officer testify at the suppression hearing; (3) have all evidence fingerprinted; and (4) investigate the relevant sentencing statute; (B) his sentence was illegal because he was sentenced under the wrong statute; and (C) the post-conviction court erred by not replacing the prosecutor who sent him a disparaging letter. *Id.*, Ex. 1 & 13. Petitioner failed to pay the filing fee. He was notified by the court of this deficiency but failed to cure it and, for that reason, the court struck petitioner's application for leave to appeal. *Id.*, Ex. 1 & 14. Petitioner did not file a notice of appeal in regard to the denial of his motion to correct an illegal sentence. *Id.*, Ex. 1.

In the instant petition, petitioner maintains that (A) he was subjected to an unlawful search and seizure; (B) his sentence is illegal; (C) trial counsel was ineffective for failing to (1) communicate with him properly; (2) have all physical evidence fingerprinted; (3) subpoena the canine officer to testify at the suppression hearing; and (4) be informed of the law with regard to

3

sentencing; (D) the prosecutor engaged in misconduct by sending him a disparaging letter; and (E) the canine officer stole property from petitioner.[1]  ECF Nos. 1 & 4.

## Threshold Considerations

### Timeliness & Exhaustion of State Remedies

Respondents do not contend, and the court does not find, that the petition was filed outside the one-year limitations period set forth in 28 U.S.C. § 2244(d)(1).  Further, petitioner no longer has any direct review or collateral review remedies available to him under state law with respect to the claims raised in this court.  His claims are timely and deemed exhausted for the purpose of federal habeas corpus review.

### Procedural Default

Before a petitioner may seek habeas relief in federal court, he must exhaust each claim presented to the federal court by pursuing remedies available in state court.  *See Rose v. Lundy*, 455 U.S. 509, 521 (1982).  This exhaustion requirement is satisfied by seeking review of the claim in the highest state court with jurisdiction to consider the claim.  *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); 28 U.S.C. § 2254(b) and (c).  In Maryland, this may be accomplished by raising certain claims on direct appeal and with other claims by way of post-conviction proceedings.  Exhaustion is not required if at the time a federal habeas corpus petition is filed the Petitioner has no available state remedy.  *See Teague v. Lane*, 489 U.S. 288, 297-98 (1989).

Where a petitioner has failed to present a claim to the highest state court with jurisdiction to hear it, whether it be by failing to raise the claim in post-conviction proceedings or on direct

---

[1] In his motion to amend petition which was granted by the court (ECF Nos. 12 & 13), petitioner appears to have abandoned the claim regarding the stolen property.  He indicates his claims are: "1. Fourth Amendment Violation; 2. Confined Under an Illegal Sentence; 3. Ineffective Assistance of Counsel; and 4. Prosecutorial Misconduct."  *Id.*

appeal or by failing to timely note an appeal, the procedural default doctrine applies. *See Coleman v. Thompson*, 501 U.S. 722, 749-50 (1991) (failure to note timely appeal); *Murray v. Carrier*, 477 U.S. 478, 491 (1986) (failure to raise claim on direct appeal); *Murch v. Mottram*, 409 U.S. 41, 46 (1972) (failure to raise claim during post-conviction); *Bradley v. Davis*, 551 F. Supp. 479, 481 (D. Md. 1982) (failure to seek leave to appeal denial of post-conviction relief).

The procedural default doctrine bars consideration of a claim in a petition for habeas corpus in the absence of a showing of cause and prejudice or actual innocence. *See Murray*, 477 U.S. at 495; *Wainwright v. Sykes*, 433 U.S. 72, 86 (1977). Even where a petitioner fails to show cause and prejudice for a procedural default a court must still consider whether it should reach the merits of the petitioner's claims in order to prevent a fundamental miscarriage of justice. *See Schlup v. Delo*, 513 U.S. 298, 314 (1995); *Bostick v. Stevenson*, 589 F.3d 160, 164 (4th Cir. 2009). The miscarriage of justice standard is directly linked to innocence. *Schlup*, 513 U.S. at 320. Innocence is not an independent claim; rather, it is the "gateway" through which a petitioner must pass before a court may consider constitutional claims which are defaulted. *Id*. at 315. The miscarriage of justice exception applies where a petitioner shows that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray*, 477 U.S. at 496.

Respondents argue that all of petitioner's claims, save his Fourth Amendment claim, are procedurally defaulted. The court agrees.

On direct appeal, petitioner alleged his sentence was illegally enhanced. The claim was rejected by the Maryland Court of Special Appeals; however, petitioner did not seek review of that court's determination when he filed a petition for writ of certiorari in the Maryland Court of Appeals. *Id.*, Exs. 5-10.

In state post-conviction proceedings, petitioner again challenged the legality of his sentence and raised the previously set forth claims of ineffective assistance of counsel. All of the claims were rejected by the post-conviction court. Petitioner filed a timely application for leave to appeal, but did not comply with the filing fee requirement, and the application was struck. As such, these claims were not properly raised in the Court of Special Appeals and are deemed procedurally defaulted. Further, the denial of petitioner's motion to correct an illegal sentence was reviewable by filing a notice of appeal, which petitioner did not file. *Id.*, Ex. 1. This claim was likewise not raised in all appropriate state courts and is deemed procedurally defaulted.

Petitioner's claims that the canine officer stole property and that the prosecutor engaged in misconduct were not properly presented to the state court for review. Petitioner does not have any meaningful state court review available to him. ECF No. 10. As such, these claims are also deemed procedurally defaulted. *See Mackall v. Angelone*, 131 F.3d 442, 449-50 (4th Cir. 1997) (en banc) (deeming procedurally defaulted a claim that was not presented to state appellate court, where presentation of claim in state court would now be fruitless).

Petitioner was given an opportunity to explain why these claims should not be procedurally defaulted. ECF No. 11. Petitioner has responded. ECF No. 13. Petitioner asserts he has little or no knowledge of the law and attempted to exhaust his claims. *Id*. The court concludes that petitioner has failed to demonstrate cause and prejudice with regard to exhaustion of these claims. Furthermore, actual innocence is not apparent from the record. The grounds are defaulted and shall not be addressed on the merits. Alternatively, even assuming petitioner's claims were properly before this court, the detailed reasoning of the state appellate

and post-conviction courts, which is supported legally and factually, precludes granting relief by way of federal habeas corpus review.[2]

## Standard of Review for Petitioner's Remaining Claim

An application for writ of habeas corpus may be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). The federal habeas statute at 28 U.S.C. § 2254 sets forth a "highly deferential standard for evaluating state-court rulings." *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997); *see also Bell v. Cone*, 543 U.S. 447 (2005). This standard is not only "highly deferential" but also "difficult to meet." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011); *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011).

A federal court may not grant a writ of habeas corpus unless the state's adjudication on the merits 1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States"; or 2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state adjudication is contrary to clearly established federal law under § 2254(d)(1) where the state court 1) "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or 2) "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [that of the Supreme Court]." *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

Under the "unreasonable application" analysis under 2254(d)(1), a "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fair-minded

---

[2] The court notes that the claim regarding illegal sentencing exclusively concerned state law and is not cognizable on federal habeas review.

7

jurists could disagree' on the correctness of the state court's decision." *Harrington*, 131 S. Ct. at 786 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Thus, "an unreasonable application of federal law is different from an incorrect application of federal law." *Id*. at 785 (internal quotation marks omitted).

Further, under § 2254(d)(2), "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 130 S. Ct. 841, 849 (2010). "[E]ven if reasonable minds reviewing the record might disagree about the finding in question," a federal habeas court may not conclude that the state court decision was based on an unreasonable determination of the facts. *Id*. "[A] a federal habeas court may not issue the writ simply because [it] concludes in its independent judgment that the relevant state-court decision applied established federal law erroneously or incorrectly." *Renico v. Lett,* 559 U.S. 766, 130 S. Ct. 1855, 1862 (2010).

The habeas statute provides that "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). "Where the state court conducted an evidentiary hearing and explained its reasoning with some care, it should be particularly difficult to establish clear and convincing evidence of error on the state court's part." *Sharpe v. Bell*, 593 F.3d 372, 378 (4th Cir. 2010). This is especially true where state courts have "resolved issues like witness credibility, which are 'factual determinations' for purposes of Section 2254(e)(1)." *Id*. at 379.

Petitioner maintains that his rights under the Fourth Amendment were violated. A suppression hearing was held on petitioner's claim. The facts adduced at the hearing as recounted by the Court of Special Appeals on petitioner's direct appeal are as follows:

> At the suppression hearing held on March 12, 2007, Corporal Jason King ("Cpl. King") of the Salisbury Police Department testified on behalf of the State. Cpl. King stated that, on May 4, 2006, at approximately 7:30 p.m., he was in an unmarked patrol vehicle conducting a routine patrol in the area of Truitt Street when he observed a four-door Ford vehicle parked in front of the residence at 516 Truitt Street. According to Cpl. King, the vehicle was stopped in the roadway for a couple of minutes, blocking the northbound lane of Truitt Street — a two-lane road that has no shoulder for stopping —although 516 Truitt Street had a vacant driveway. A person then came out of the house, entered the vehicle, and sat in the front seat on the passenger side.
>
> Then, the vehicle pulled into the driveway of 531 Truitt Street. Cpl. King noticed a "no trespassing" sign on the door of the residence and decided to conduct a traffic stop regarding both the trespassing and the traffic violation.
>
> Upon approaching the vehicle, Cpl. King asked the driver, Lowe, for his license and registration. Cpl. King testified that he became very suspicious of the car's passengers because: (1) Lowe had his license and paperwork readily available; (2) the vehicle was rented in Philadelphia, Pennsylvania; (3) the vehicle's paperwork had a "significant cash deposit" listed in the amount of $1,000; (4) the vehicle was not rented under Lowe's name, but listed Lowe as a secondary driver and the renter was not present; and (5) Lowe's carotid artery was "pounding Profusely" although "[t]he temperature outside was about 72 degrees."
>
> Cpl. King returned to his patrol car, where he called for a K-9 unit, ran the standard checks on Lowe's driver's license, inspected the car's rental agreement, and wrote out a traffic warning. According to Cpl. King, it normally takes him approximately "six to eight minutes, ten upwards," to write a warning, depending on the speed of dispatch and how long it takes to get the record check completed.
>
> The K-9 officer, Trooper Neil Elin ("Trooper Elin"), arrived as Cpl. King was re-approaching the vehicle to issue Lowe the warning. As Trooper Elin was getting out of his car, Cpl. King saw Lowe and the passenger look over their shoulders and throw something into the center console compartment. Cpl. King believed that they did this in reaction to seeing the K-9 unit's arrival. Upon being asked what was placed in the center console, Lowe "opened the console back up, grabbed a brown paper bag and ran from the car."

ECF No. 10, Ex. 8, pp. 1-3

The trial court denied petitioner's motion to suppress, finding that there was a basis for conducting a traffic stop and that the stop was not extended in order to allow time for the canine

unit to arrive. *Id*. Ex. 2.  The Court of Special Appeals likewise found that the traffic stop was lawful and was not improperly prolonged to allow for the canine unit to arrive. *Id*., Ex. 7.

The law concerning Fourth Amendment claims in federal habeas corpus proceedings is well established and familiar to this court.  "[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that the evidence obtained in an unconstitutional search or seizure was introduced at his trial."  *Stone v. Powell*, 428 U.S. 465, 494 (1976) (footnotes omitted).

> [A] district court, when faced with allegations presenting Fourth Amendment claims, should, under the rule in *Stone v. Powell, supra*, first inquire as to whether or not the petitioner was afforded an opportunity to raise his Fourth Amendment claims under the then existing state practice.  This may be determined, at least in this Circuit, from the relevant state statutes, the applicable state court decisions, and from judicial notice of state practice by the district court.  Second, . . . when the district court has made the 'opportunity' inquiry, it need not inquire further into the merits of the petitioner's case, when applying *Stone v. Powell, supra*, unless the prisoner alleges something to indicate that his opportunity for a full and fair litigation of his Fourth Amendment claim or claims was in some way impaired.

*Doleman v. Muncy*, 579 F.2d 1258, 1265 (4th Cir. 1978); *see also Mueller v. Angelone*, 181 F.3d 557, 570 n.8 (4th Cir. 1999) (recognizing continued application of *Stone* post-AEDPA); *Grimsley v. Dodson*, 696 F.2d 303, 304 (4th Cir.1982) ("*Stone v. Powell* marked, for most practical purposes, the end of federal court reconsideration of Fourth Amendment claims by way of habeas corpus petitions where the petitioner has the opportunity to litigate those claims in state court.").

The record shows that petitioner was provided with the opportunity to fully litigate his Fourth Amendment claims.  Petitioner challenged the validity of the search and seizure by filing,

through counsel, a motion to suppress. An evidentiary hearing was held in the circuit court and the motion was denied. Petitioner raised the same issue in his direct appeal to the Court of Special Appeals which, after thoroughly examining the facts surrounding the seizure of the evidence, as well as the legal reasoning of the circuit court, upheld the trial court's denial of petitioner's motion to suppress. Clearly, petitioner had a full and fair opportunity to litigate the legality of the search in the Maryland courts.

## Conclusion

The instant petition for habeas corpus relief will be denied and this case dismissed by separate Order. When a district court dismisses a habeas petition, a certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A prisoner satisfies this standard by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004); (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-el v. Cockrell*, 537 U.S. 322, 336 (2003) citations omitted. Petitioner does not satisfy this standard, and the court declines to issue a certificate of appealability.

Dated this 18th day of April, 2013          BY THE COURT:


_____ /s/ _____
James K. Bredar
United States District Judge